UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARY E. MARULLO,

                              Plaintiff,          12-CV-871(MAT)

            v.                                    **DECISION**
                                                  **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                              Defendant.

_____

## INTRODUCTION

        Plaintiff Mary E. Marullo ("Plaintiff"), who is represented by
counsel, brings this action pursuant to the Social Security Act
("the Act"), seeking review of the final decision of the
Commissioner of Social Security ("the Commissioner") denying her
application for Supplemental Security Income ("SSI"). This Court
has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g),
1383(c). Presently before the Court are the parties' motions for
judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure. Dkt. ##9,11.

## BACKGROUND

        Plaintiff protectively applied for SSI on March 21, 2008,
alleging disability beginning January 17, 2008 due to neuropathy in

_____

        [1] Carolyn M. Colvin is automatically substituted for the
previously named Defendant Michael Astrue pursuant to
Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend
the caption accordingly.

both legs and nerve damage. T. 97-100, 108.[2] Her application was initially denied, and she requested a hearing before an Administrative Law Judge ("ALJ"). T. 51, 54-57, 62. Plaintiff appeared with counsel before ALJ Robert T. Harvey on June 17, 2010. T. 25-50. A written decision was issued on September 13, 2011, finding that Plaintiff was not disabled. T. 14-20.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"),[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 21, 2008. At step two, he found that her severe impairments were Charcot-Marie-Tooth disease, type 2; motor-sensory polyneuropathy of the lower extremity; obesity; and hereditary spastic paraparesis. At step three, he determined that Plaintiff's impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpart P, Appendix 1. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift, carry, push, and pull ten pounds; sit six hours and stand/walk two hours in an eight-hour workday; could not work at unprotected heights, exposed to cold, or around heavy, moving, or

---

[2] Numerals preceded by "T." refer to pages from the transcript of the administrative record, submitted by Commissioner as a separately bound exhibit in this proceeding.

[3] See 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).

dangerous machinery. She could not crawl or climb ropes, ladders, or scaffolds, and had frequent limitations in bending, climbing, stooping, squatting, kneeling, and balancing, and occasional limitations in handling, fingering, and feeling. The ALJ further found that Plaintiff could sit or stand for thirty minutes before changing positions. The ALJ determined at step four that Plaintiff had no past relevant work, and at step five concluded that jobs existed in the national economy that Plaintiff could perform. As such, Plaintiff was found to be not disabled. T. 16-20.

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 20, 2012. T. 1-4, 6-7. Plaintiff then filed this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Dkt.#1.

In the present motion, Plaintiff alleges that the ALJ's decision is erroneous because it is not supported by substantial evidence contained in the record, or is legally deficient and therefore she is entitled to judgment on the pleadings. Pl. Mem. (Dkt.#10) 7-14. The Commissioner cross-moves for judgment on the pleadings on the grounds that the ALJ's decision is correct, is supported by substantial evidence, and was made in accordance with applicable law. Comm'r Mem. (Dkt.#11-1) 17-25.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

**DISCUSSION**

**I.   General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits

the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. **Medical Evidence**

Beginning April 20, 2007, Plaintiff began treatment at DENT Neurologic Institute ("DENT") for back pain, pain in the lower extremities, and gait problems. T. 154. In June, 2007, an EMG/nerve conduction study revealed severe peripheral neuropathy with features of chronic axonal loss and probable demyelination in her right extremities and lower left extremities. T. 156-57.

Dr. Harnath Clerk, M.D., Plaintiff's primary care provider at the time, issued a treating source opinion that Plaintiff could sit, stand, and walk for a total of one hour per eight hour workday; that she could lift up to twenty pounds occasionally; needed a cane to ambulate; and that she should only occasionally climb, balance, stoop, kneel, crouch, or crawl. T. 214. Dr. Clerk further opined that Plaintiff should not be exposed to more than a moderate noise level; should only occasionally be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle; humidity and wetness, dusts, odors, fumes, and pulmonary irritants, extreme cold or heat; and vibrations. T. 214-15.

On August 4, 2008, Plaintiff was consultatively examined by Kathleen Kelley, M.D., who diagnosed her with probable cerebral palsy with spastic dysplasia, hyper-reflexia of the lower extremities, and nonspecific ankle and knee pain with full range of motion T. 180. The doctor reported that Plaintiff showered, bathed, dressed herself, cooked, cleaned, did laundry, shopped, and watched television, but did not perform childcare activities. T. 177-78. The physical examination revealed spastic diplegic gait with inability to walk on heels, wide stance, positive Romberg test, and inability to walk tandem heel-to-toe. Babinski test was negative, muscle tone was normal, Plaintiff needed no help changing for exam or getting on and off the exam table, and was in no acute distress. T. 178. Plaintiff had no cyanosis, clubbing, or edema, no

significant varicosities or trophic changes, and no evident muscle atrophy. T. 179. She had full range of motion in hips, knees, and ankles bilaterally, with full strength in her upper and lower extremities. Id.

Dr. Kelley opined that Plaintiff would have difficulty walking long distances, climbing stairs, standing for long periods, and that she would need breaks secondary to her spastic gait. T. 180. Lifting, carrying, or reaching for markedly heavy objects or pushing and pulling markedly heavy objects from a standing position would cause balance issues. Id. Plaintiff should refrain from working around heights, sharp objects, or heavy equipment due to her gait, and she would have difficulty kneeling, squatting repetitively, or crawling. Id.

On August 28, 2009, I. Larios, a non-physician state agency review analyst, evaluated Plaintiff's medical record. T. 199-204. Larios found that Plaintiff was limited to sedentary work (able to lift ten pounds occasionally; able to sit for six hours and stand for two hours in an eight-hour day), with the additional restrictions that Plaintiff was only frequently able to stoop, kneel, crouch, and crawl, and occasionally able to climb and balance. Id.

On July 2, 2009, Plaintiff underwent an MRI of the brain which was negative for any serious abnormality. T. 218-19. Based on the negative MRI and the previous EMG study, Plaintiff's

specialists at DENT diagnosed Charcot-Marie-Tooth disease (also known as hereditary motor and sensory neuropathy), an inherited neurological disorder characterized by weakness of the foot and lower leg muscles.

See:http://www.ninds.nih.gov/disorders/charcot_marie_tooth/detail _charcot_marie_tooth.htm (last accessed 10/24/2014).

Charcot-Marie-Tooth is a slow-progressing and non-fatal disease, with symptoms varying greatly among individuals, and pain ranging from mild to severe. Id. Some individuals may need to rely on braces or other orthopedic devices for mobility. Id.

Treatment notes from DENT dated September 17, 2009, indicate that Plaintiff complained of worsening weakness in her lower extremities and hands, difficulty walking, and burning sensation in her legs. T. 246. Dr. Malti Patel's impression was motor sensory perihpheral neuropathy in uppper and lower extremity, and blood work was recommended. Id.

Plaintiff was prescribed leg braces but was not compliant in using them. T. 262, 275.  She also underwent physical therapy, which she discontinued after five weeks. T. 272, 299-317. She was also not compliant with using a recommended cane. T. 178, 200, 212.

## III. **Non-Medical Evidence**

Plaintiff is a high-school graduate who completed one year of college and was 30 years-old at the time of her hearing. T. 27,

112. She has past work experience as a certified nursing assistant, dishwasher, and factory line worker. T. 109.

On May 2, 2008, Plaintiff completed a Function Report as part of her SSI application, in which she stated her daily activities included bathing, dressing and feeding her children, washing dishes, doing laundry with breaks, preparing lunch and dinner, watching television, vacuuming, and shopping. Her hobbies included walking and bicycle riding. T. 118-121.

At the hearing, Plaintiff testified that she could only stand for a half-hour before her legs would begin to shake, that she had difficulty sitting for longer than an hour, and had loss of feeling and muscle in her hands, which caused her to drop whatever she might be holding at the time. T. 34, 37, 38. Her daily activities included dressing, bathing, washing dishes, doing laundry, cleaning her home (making beds, vacuuming, sweeping, mopping, taking out the trash), shopping, and occasionally visiting family members. T. 35-37. She told the ALJ she would lie during the day when she had "major" back pain. T. 43-44.

The ALJ also heard testimony from Vocational Expert ("VE") Jay Steinberg. T. 44-50. The ALJ asked the VE to assume an individual of Plaintiff's age, education, and vocational background, with the limitations outlined in the RFC findings. T. 45-46. The VE testified that such an individual could work as a telephone survey

worker or telemarketer, which is unskilled, sedentary work that exists in significant numbers in the national economy. T. 45-47.

## IV.  <u>The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.</u>

### A.   Treating Source Opinion

Plaintiff first contends that the ALJ committed reversible error by failing to give Plaintiff's treating source opinion controlling weight or to provide an explanation as to why controlling weight was not given. Pl. Mem. (Dkt.#10) 7-8.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993). When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(c). Although

the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken. See Petrie v. Astrue, 412 Fed. Appx. 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'"; Hudson v. Colvin, No. 12-CV-0044, 2013 WL 1500199, *10 n. 25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence."), report and recommendation adopted, 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013).

The ALJ considered Dr. Clerk's November 2008 functional assessment and afforded it "some weight." T. 18. A review of the evidence in the record supports this determination.

Dr. Clerk's residual functional capacity assessment indicated that Plaintiff could lift/carry up to 20 pounds, sit/stand/walk for one hour each, and could perform all postural and environmental activities occasionally. T. 211-16. Though he noted that Plaintiff "required a cane to ambulate," he also indicated that a cane was not "medically necessary." T. 212. In assessing Plaintiff's ability

to use her hands and feet, the doctor wrote the notation, "NA," presumably indicating that Plaintiff had no functional restrictions. T. 213. He did not explain his responses on the medical source statement despite questions requesting identification of supporting medical or clinical findings. T. 212, 213, 215.

The ALJ reviewed and referenced the medical record, medical source statements, and Plaintiff's activities of daily living, which were only partially consistent with Dr. Clerk's assessment. T. 16-19. For example, Plaintiff's non-compliance with physical therapy and leg braces and her extensive daily activities undermine the doctor's extreme limitations. T. 18. Dr. Clerk's own treatment notes from September and December, 2008, indicate unremarkable physical findings, normal upper and lower extremities with full range of motion bilaterally, no evidence of clubbing or cyanosis, normal peripheral circulation, and no apparent acute distress. T. 18, 239-40, 241-42. His assessment was also inconsistent with that of the consultative examiner, Dr. Kelley, whose physical examination yielded largely normal results, and who opined that Plaintiff would have difficulty walking long distances, climbing stairs, standing for long periods, and would require breaks. T. 17, 178-80. The ALJ assigned equal weight to Dr. Clerk's and Dr. Kelley's reports. T. 17-18. Finally, Dr. Clerk's RFC assessment was partially consistent with the SSA non-physician reviewer's

opinion that Plaintiff could frequently lift less than ten pounds, occasionally lift ten pounds, stand/walk for two hours, sit for six hours, and had no restrictions pushing or pulling, including operation of hand and/or foot controls.[4] T. 200.

Here, the ALJ discussed Dr. Clerk's opinion along with other medical evidence, including his own treatment notes, and the record as a whole. Although the ALJ did not explicitly state his reasoning for affording Dr. Clerk's opinion less than controlling weight, the omission was harmless error. The Second Circuit has explained that "[w]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (declining to remand even though the ALJ failed to satisfy the treating physician rule as the medical record that the ALJ overlooked would not have altered the ALJ's disability determination (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987))); see also Halloran, 362 F.3d at 32–33 (declining to remand even when the ALJ failed to provide "good reasons" for the weight given to a treating physician's opinion). This is not a case in which the ALJ overlooked opinions more favorable to Plaintiff, but

---

[4] The Court notes that the ALJ did not rely on the opinion of a non-physician to reject Dr. Clerk's opinion, but considered it in conjunction with the record as a whole. Cf. McGeever v. Barnhart, No. 05-CV-1363, 2009 WL 81287 (N.D.N.Y. 2009) (rejection of treating physician opinion not supported by substantial evidence where ALJ relied "in large part" on the opinion of a non-medical reviewer).

rather evaluated and discussed the medical evidence thoroughly to reach his conclusion that Dr. Clerk's opinion warranted only some weight. His determination would not have been different had he explicitly outlined the weight assigned to these opinions. Therefore, the ALJ's oversight does not merit remand.

**B.   RFC Finding**

Plaintiff next claims that the ALJ violated Social Security Ruling ("SSR") 96-8p by failing to provide a narrative in support of his RFC finding. Pl. Mem. 8-10.

Residual functional capacity is "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "'Ordinarily, RFC is an assessment the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis,' and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. (quoting SSR 96-8p, 1996 WL 374184, at *1)

In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective

evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e). Pursuant to 20 C.F.R. § 404.1527(C)(1), every medical opinion, regardless of its source, must be evaluated. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ gave "some weight" to Plaintiff's treating physician and the consultative examiner, whose opinions were conflicting. T. 17-18. Contrary to Plaintiff's assertion, this was permissible.

Plaintiff cites to <u>Fisher v. Astrue</u>, No. 10-cv-1117, 2012 WL 280737 (N.D.N.Y. Jan. 31, 2012) in support of her argument that the Commissioner's decision should be reversed on the ground that it is impossible to ascertain the basis of the ALJ's RFC determination and whether weighing of the medical evidence complied with 20 C.F.R. § 404.1527(d). As the Commissioner points out, <u>Fisher</u> is distinguishable. There it was determined that the ALJ's findings were conclusory where the ALJ "failed to specifically identify the opinions, if any, she was weighing, and to perform the requisite evaluation of them in accordance with 20 C.F.R. § 404.1527." 2012 WL 280737 at *2 (internal quotation omitted). It was also agreed upon by the parties in <u>Fisher</u> that the ALJ's step four finding was unsubstantiated. Here, the ALJ properly identified all of the

medical opinions in the record and analyzed them pursuant to the appropriate regulations and SSR 96-8p.

Though the ALJ afforded equal weight to the consultative examiner's and the treating physician's opinions, it is easily gleaned which portions of those opinions were rejected. For example, Dr. Kelley diagnosed Plaintiff with "probably cerebral palsy," which the ALJ did not find to be a severe impairment. T. 16, 180. It is apparent from considering the total decision that ALJ carefully considered all of the opinions in the medical record. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (While ALJ must set forth the essential considerations with sufficient specificity to enable the reviewing court to determine whether the decision is supported by substantial evidence, he need not "explicitly reconcile every conflicting shred of medical testimony."). Most importantly, there is substantial evidence in the record that supports the denial of benefits, which rebuts Plaintiff's claim. See Schaal v. Apfel, 134 F.3d 496, 504-05 (2d Cir. 1998).

Thus, the ALJ's RFC determination is supported by substantial evidence.

### C.    VE Testimony

Plaintiff also argues that the ALJ erred in relying on the VE's testimony because it was based on an incomplete hypothetical. Pl. Mem. 10-12.

For the opinion of a VE to constitute substantial evidence, the hypothetical questions posed to the VE must include all of the claimant's limitations that are supported by medical evidence in the record. See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981) (a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job"); see also Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments....") (internal citations and quotation marks omitted). If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. Melligan v. Chater, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996).

In making his step five finding that jobs existed in the national economy that Plaintiff could perform, the ALJ relied on the testimony of VE Jay Steinberg. He initially asked the VE to assume an individual that could, inter alia, lift/carry/push ten pounds, sit two hours, and stand/walk six hours in an eight-hour day. T. 45. He went on to clarify that he intended to frame the hypothetical as a person who could perform "sedentary" work with limitations. See 20 C.F.R. § 404.1567(a) ("Sedentary work involves

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.")

The ALJ appears to have misstated the standing and sitting limitations, as his hypothetical indicated standing for six hours and sitting for two hours, which is inconsistent with sedentary work. See 20 C.F.R. § 404.1567(a), supra. The ALJ's inaccuracy is, at most, harmless error. The VE specifically acknowledged that the hypothetical individual was limited to sedentary work and testified that such an individual could perform jobs at the unskilled sedentary level, consistent with the ALJ's RFC finding that Plaintiff could lift, carry, push, and pull ten pounds, sit for six hours and stand or walk for two hours in an eight-hour workday, with additional restrictions. T. 16 (emphasis added). Plaintiff was therefore not prejudiced  by the ALJ's error because the RFC determination was supported by substantial evidence, and the VE based his answer on that initial RFC determination. See generally Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Because the hypothetical questions were based upon an RFC that realistically and accurately described Plaintiff's limitations, the VE's testimony provided substantial evidence to support the finding of no disability.

### D.  Severity of Impairment

Plaintiff avers that the ALJ failed to consider cerebral palsy a severe impairment and provided no explanation as to why it was non-severe in his step two analysis. Pl. Mem. 14-15.

For an impairment to be considered severe, it must more than minimally limit the claimant's functional abilities, and it must be more than a slight abnormality. 20 C.F.R. § 416.9249(c). It must also be "medically determinable," established through medically acceptable clinical or laboratory diagnostic techniques demonstrating the existence of a medical impairment. Skiver v. Colvin, No. 12-CV-899, 2014 WL 800228, *6 (W.D.N.Y. Feb. 28, 2014); 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the individual's statement of symptoms. 20 C.F.R. § 416.908.

On the outset, there is no diagnosis of cerebral palsy by Plaintiff's treating physicians (Dr. Michael Grey, Dr. Patel, Dr. Holmlund) in a record spanning several years of treatment. T. 233-42, 244-60. Moreover, Plaintiff's May, 2007 EMG and July, 2009 MRI were unremarkable for cerebral palsy. T. 156, 219.  The

diagnosis of "probable cerebral palsy" was made by Dr. Kelley during a consultative examination on August 4, 2008 and was therefore not supported by the medical records or the clinical findings, and it is Plaintiff's burden to come forward with evidence to support her disability claim. See 20 C.F.R. § 416.912(c).

Plaintiff urges the Court to find reversible error on the basis that the ALJ failed to develop the record as to Dr. Kelley's diagnosis. Pl. Mem. 13. The two cases cited by Plaintiff, Burgin v. Astrue, 348 Fed.Appx. 646 (2d Cir. 2009), and Duncan v. Astrue, No. 09-CV-4462, 2011 WL 1748549 (E.D.N.Y. May 6, 2011), are inapposite. Pl. Reply Mem. (Dkt.#12) 14. In Duncan, the ALJ found that the plaintiff had medically determinable severe impairments but did not explicitly identify those impairments or specify which of those multiple impairments were considered severe. 2011 WL 1748549, at *22. Similarly, remand was required in Burgin where the plaintiff suffered from major depression and bipolar disorder, both of which were identified by the ALJ and were supported by separate diagnoses in the record, but the ALJ failed to consider the plaintiff's depression when determining her RFC.

Here, the medical record does not support a diagnosis of "probable cerebral palsy," resulting from a one-time examination, but does support the diagnoses of Charcot-Marie-Tooth disease, motor sensory polyneuropathy, and hereditary spastic paraplegia.

These disorders are consistent with Plaintiff's documented symptoms of gait abnormality and neuropathy in her lower extremities, supported by the diagnostic testing, and were diagnosed by her treating physicians during an extended course of treatment.

Based on the evidence cited above and in the record as a whole, the ALJ's finding that Plaintiff's "probable cerebral palsy" was not a severe impairment was supported by substantial evidence. Moreover, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act and continued with the sequential analysis, any arguable errors in the findings at step two of the analysis were harmless. See Tryon v. Astrue, No. 0-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012).

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt.#9) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt.#11) is granted. The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          October 28, 2014